**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**UNITED STATES OF AMERICA,**

**v.**                                              **Criminal No.: 4:17cr000127**

**JOSHUA DAVID AUSTIN,**

          **Defendant.**

## POSITION OF THE DEFENDANT ON SENTENCING

COMES NOW the Defendant, Joshua David Austin, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-sentence Report and sets forth the following as his position on sentencing:

## OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Austin, through counsel, has previously informed the probation officer and the attorney for the government that he has no objections to the Pre-sentence Report that would affect the sentencing guidelines calculation.

## SECTION 3553 FACTORS

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).   With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a

district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United State*s, 128 S. Ct. 586, 597 (2007), *see also*, *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

Indeed, as mandated by Congress, the fundamental principle of sentencing is that a court "*shall impose a sentence sufficient, but not greater than necessary*" to meet specified sentencing goals, including the goal of just punishment.   18 U.S.C. § 3553.   In determining the minimally sufficient sentence, §3553 directs sentencing courts to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of Mr. Austin;

(2)     the need for the sentence imposed;

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of Mr. Austin; and

(D)     to provide Mr. Austin with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentences and the sentencing range established for [the offense];

(5)     any pertinent policy issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.

In addition, a district court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597.   Moreover, the Supreme Court has specifically ruled that, in balancing the §3553(a) factors, a judge may determine that, "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or [that] the case warrants a different sentence regardless.")

Other statutes also give the district court direction in sentencing.   For instance, under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is ***not*** an appropriate means of promoting correction and rehabilitation (emphasis added). In

3

sum, in every case, a sentencing court must consider *all* of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

### Introduction

Joshua Austin comes before the court a non-violent first-time offender who is facing a lengthy and harsh prison sentence.   As the discussion below bears out, aside from this offense Mr. Austin has been a contributor and an asset to his community.   He is a decorated veteran who served his country selflessly and who still carries the psychological effects of his service with him today.

Mr. Austin's advisory guideline's range is not based upon the careful study and measured recommendations of the Sentencing Commission.   It is instead based upon a guideline that is the product of purely political whims and the numerous resulting enhancements that apply in even the most typical cases.   The end result is a sentencing framework that utterly fails to make any meaningful distinction between individual defendants.

For all of these reasons, as well as the arguments set out below, a sentence within the range currently set forth in the Pre-sentence Report is far in excess of what is just and necessary.   Instead, a sentence of confinement of 60 months, coupled with supervised release and mandatory counseling, is a far more appropriate disposition and provides for a just punishment that is sufficient, but not greater than necessary, to fulfill the goals of § 3553.

## The Recommended Sentencing Guidelines Range is Deeply Flawed

While the Sentencing Guidelines are advisory, they are nonetheless used as the starting point for any sentencing decision.   *See Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (observing that post-*Booker* "sentencing decisions are anchored by the Guidelines . . . [D]istrict courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.") (emphasis in original) (citation omitted).   Mr. Austin 's guideline range is governed by the U.S.S.G. § 2G2.2.   This guideline is deeply flawed.

In 2012, the United States Sentencing Commission compiled a report to Congress on this flawed guideline.   The Commission explained that the report was compiled, in large part, due to the increasing rate of below-guideline sentences for offenders, like Mr. Austin, sentenced under U.S.S.G. § 2G2.2.   The Commission further conducted the research and report pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability."   U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012), at ii, 323 (hereinafter "Report").

In the Report, the Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the

guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi, 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6. Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323. "As a result, the cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[ ] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

The Commission illustrated the problem:

> Non-production child pornography offenses have become almost exclusively Internet-enabled crimes; the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file-sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography. The typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. **As a result, four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders.** Indeed, most of the enhancements in §2G2.2, in their

current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

*Id.* at iii.   (emphasis added).

The Commission's lengthy report constitutes a scathing critique of the guideline.

The Commission concluded, *inter alia*:

> [T]hat the current non-production guideline warrants revision in view of its outdated and disproportionate enhancements related to offenders' collecting behavior . . . . The current guideline produces overly severe sentencing ranges for some offenders.

*Id.*

Indeed, a Judge of this Court has previously recognized the irrationality of this

guideline.   For instance, in *United States v. Coffey*, this Court stated:

> The Sentencing Guidelines covering the non-production of child pornography seem to solely be concerned with the seriousness of the offense and the need for deterrence. However, this appears to be at the expense of differentiating between prototypical non-production child pornography offenses and more egregious offenses involving production of child pornography. Section 2G2.2 of the Guidelines requires this Court to significantly increase Defendant's base offense level of 18 because of several enhancements—many tied to the technology used in the offense—that now apply in the vast majority of cases of possession, receipt, or distribution of child pornography. This is especially so now that "non-production child pornography offenses have become almost exclusively Internet-enabled crimes."' United States Sentencing Commission, Executive Summary, Report to the Congress; Federal Child Pornography Offenses (Dec. 2012) ("2012 Report to Congress"), at ii. According to another study carried out by the Sentencing Commission using data from 2011, 97 percent of non-production child pornography cases involve a computer, 95 percent involve a victim under 12 years, 79 percent involve violent images, and 70 percent involved at least 600 images. *See* United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics. Fiscal Year 2011. 41-A2, See also Executive Summary. 2012 Report to Congress, xi (citing similar numbers—96.2 percent for use of a computer, 96.1 percent for a victim under 12, 74.2 percent for sado-masochistic images, and 96.9 percent for

the calculation of image quantity—for the fiscal year 2010). Defendant received all of these enhancements. Yet, because these enhancements apply in the vast majority of cases, these enhancements, however justifiable in the abstract, do little to differentiate Defendant's conduct from other non-production cases.

*United States v. Coffey,* Case No. 2:16cr54, ECF No. 34 (E.D. Va. Nov. 15, 2016) (Doumar, J.).

The analysis that the Court applied in *Coffey* applies with equal force to Mr. Austin's case.   Without the application of the various enhancements provided for in § 2G2.2, which the Commission has announced warrant review, Mr. Austin's total offense level could be as low as 19, which when coupled with his criminal history score of 0, results in a guideline range of 30 to 37 months' imprisonment.   *See* Report at iii, xi, 6, 313.

Sentencing judges throughout the nation have uniformly recognized the inadequacies and unfairness inherent to § 2G2.2.   Indeed, downward departures from the recommended guidelines range have become the rule rather than the exception.   For instance, in fiscal year 2016, courts departed downward from recommended range in nearly 69 percent of all child pornography cases and imposed a guidelines-range sentence in only 29 percent of such cases.   U.S. Sent'g Comm'n, *2016 Annual Report and 2016 Sourcebook of Federal Sentencing Statistics,* at S-77, S-79 (2016).   Taking all of this into account, and bearing in mind the Mr. Austin is still subject to a mandatory term of 60 months, a downward departure to that range is more than warranted.

## Nature and Circumstances of the Offense

Mr. Austin pleaded guilty to one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2255(A)(a)(2). The facts and circumstances of this offense are fully set forth in the Pre-sentence Report and Mr. Austin agrees that they are accurate. There are, however, numerous factors which the Court should consider in mitigation of Mr. Austin's sentence.

The nature and circumstances of this offense are quite characteristic of the typical child pornography case that comes before this Court. There is nothing that is particularly aggravating or unusual about Mr. Austin's case. Mr. Austin waived *Miranda* and cooperated with authorities upon his arrest and assisted them in their investigation of his activities. In addition, the government agrees that this is not a case of collecting and there is no evidence the Mr. Austin has ever has any inappropriate contact with a child.

That said, Mr. Austin recognizes that these are not victimless offenses and he appreciates the gravity of his actions and the harm that can and does result from this type of conduct. He continues to take full responsibility for his crimes and accepts whatever punishment the Court deems just. Mr. Austin asks that the Court give these factors great weight in fashioning an appropriate and just sentence.

## History and Characteristics of Mr. Austin

The Court has the benefit of many letters written on Mr. Austin's behalf that attest to his character and provide the Court with insight on Mr. Austin as person. As those letters bear out, Mr. Austin is a man of high moral character who was brought up in a

caring, two-parent home where he was taught the value of hard work, education, and service to the community.   Like Mr. Austin himself, Mr. Austin's parents and siblings, as well as his wife Beth, are all hard-working and responsible professionals who are an asset to the communities in which they live.

Mr. Austin is 34-years old and has never had any prior contact with the criminal justice system.   To the contrary, he has a long history of good conduct, responsible employment, and selfless service to his country.   Mr. Austin is a hard worker who is well liked by his colleagues.   He is a caring husband to his wife Beth and he is the person to whom his family turns for advice and counsel.   Mr. Austin has always strived to be a good person and an asset to his community and country.   With the exception of this offense, which is unquestionably far outside of his true character, he has lived up to these ideals.

Fittingly, Mr. Austin is portrayed by all who know him well as selfless in his service of others and deeply committed to his faith.   It was largely these characteristics that led him to serve his country in the United States Army as a chaplain's assistant.   Mr. Austin spent four years in the Army, much of that time overseas and in war zones.   As a result of his service, he is well acquainted with terrible consequences of war and he continues to carry much of what he witnessed with him to this day.

Mr. Austin's wife Beth has been steadfast in her support and commitment to him throughout this ordeal and she is committed to supporting him during his incarceration. Likewise, Mr. Austin has a very close relationship with his family and they all remain very supportive of him and are ready to assist him in any way necessary to help him make a

successful transition back into the community.   Beth has expressed to both the probation officer and to counsel that she is deeply concerned that her husband be able to continue in his mental health counseling during his incarceration.   These sentiments are echoed by Mr. Austin's family.   Despite everything Mr. Austin has faced in recent months, the support of his family keeps him grounded and hopeful that he will be able to put his life back on track.

Mr. Austin recognizes that he is facing a long prison sentence.   He respects this Court and he respects the law.   He implores the Court to consider that a sentence in excess of the mandatory minimum is not necessary to deter him from future misconduct, nor is such a sentence necessary to rehabilitate him.

Taken as a whole, Mr. Austin's history and characteristics, his strong family ties, his work history, his ability to earn a good living, coupled with his cooperation, acceptance of responsibility, and remorsefulness, all compel below-guidelines sentence.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

Mr. Austin understands the seriousness of this offense and the harm that resulted from his severe lapse of judgment.   The loss of his career coupled with his pending incarceration and appearances in this Court have more than driven home for Mr. Austin the gravity of his situation.   The Court must endeavor to fashion a sentence that provides for appropriate punishment as well as adequate deterrence.   The guidelines range in this case, however, is well in excess of what is necessary in order to achieve those goals.

The reprehensible nature of this offense, as well as the stigmas and disadvantages of the felony conviction itself, provide substantial punishment and deterrence.   In addition, Mr. Austin presents none of the factors that signify a high risk of recidivism.   He has had no prior contact with the criminal justice system; he has not even incurred a traffic infraction.   Nor has Mr. Austin had any issues with drug or alcohol abuse.   He also has a strong family support system to assist him in transitioning back into the community.   Mr. Austin's personal characteristics and lack of any criminal history indicate that he is at very low risk for recidivism.   He has voluntarily begun counseling and has expressed a strong desire to continue counseling and treatment.   This clearly evidences his intent to deal with this issue head-on and live a law-abiding life when he is released.

Furthermore, as the Court well knows, Mr. Austin will be required to register as a sex offender for the rest of his life.   He will carry this stigma with him wherever he goes, in both his personal and professional lives.   The nature of this offense will affect, at a minimum, where Mr. Austin is allowed to work, where he is allowed to live, and the places that he is allowed to visit.   The harm to Mr. Austin's reputation and career, while impossible to quantify, is also undoubtedly substantial.   The shame and embarrassment he has suffered and will continue to suffer is significant and should not be discounted. *See*, *United States v. Anderson*, 533 F.3d 623, 633 (8th Cir. 2008) (holding that the district court, in fashioning a below-guidelines sentence, properly considered a number of "atypical" punishments defendant suffered including loss of his reputation and business).

Finally, Mr. Austin is likely to face a number of collateral consequences during his term of incarceration that will render his term more severe than other non-violent, first-time offenders. Specifically, Mr. Austin may be ineligible for designation to a minimum security facility and may not be eligible for programs and opportunities that are typically available to other non-violent offenders. Furthermore, he may not be eligible to to serve the last portion of his sentence in any type of community confinement, including RRC or home detention. In addition, at the conclusion of his prison sentence Mr. Austin may be required to undergo a sex offender evaluation to determine if he needs to be civilly committed.

Due to the nature of the offense, the Federal Bureau of Prisons officials will assign a "Sex Offender" Public Safety Factor (PSF), regardless of any mitigating or aggravating circumstances, to any defendant convicted of sex-related offenses. See BOP Policy Statement 5100.08 "Inmate Security Designation and Custody Classification", Chapter 5, Pages 7-8 (September 12, 2006). This policy statement states that the Sex Offender Public Safety Factor (PSF) should be applied, among other things, for "possession, distribution or mailing of child pornography or related paraphernalia" *Id.* The consequences that result from the application of this PSF will negatively impact Mr. Austin at all stages of his sentence. BOP Policy Statement 5100.08 states that inmates with a PSF "shall be housed in at least a Low security level institution, unless the PSF has been waived." *Id.* Thus, Mr. Austin will likely not be eligible to serve his sentence in a Minimum security facility even though he is a first-time, nonviolent offender.

13

It is important to understand the significant differences between Minimum and Low Security institutions. Minimum security institutions, which typically incarcerate first-time offenders, have dormitory-style housing, a relatively low staff-to-inmate ratio, nonviolent offenders and no fences. These institutions are work and program oriented. Low security institutions have double-fenced perimeters, more strict regulations regarding movement and more restrictive visiting requirements. The staff-to-inmate ratio of higher security institutions is greater than in minimum-security facilities. The rate of assault, fighting, threatening bodily harm and other prohibited acts is also more common in a low-security institution than a Minimum security camp.

Finally, application of the Sex Offender PSF will negatively impact Mr. Austin as he prepares to be released from prison. Because of the nature of his offense, Mr. Austin may be subject to an evaluation conducted by the Federal Bureau of Prisons to determine if he is "sexually dangerous" and therefore should be civilly committed upon completion of his sentence.

Mr. Austin respectfully requests that the Court take all of these factors into consideration when determining an appropriate sentence of incarceration.

### The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct.   18 U.S.C. § 3553(a)(6).   The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, *see*

*Gall*, 552 U.S. at 55 ("need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated").   As noted above, Mr. Austin's case is a typical child pornography case normally seen in this Court.   In fact, the non-typical aspects of this case warrant a downward departure. This case involves relatively few images and Mr. Austin's involvement in this conduct spanned only a brief period of time.   In sum, Mr. Austin's history and characteristics coupled with the non-aggravated circumstances of his case, warrant a downward variance and would not result in any unwarranted sentence disparities.

In looking to defendants with similar criminal histories convicted of similar criminal conduct, as defined in 18 U.S.C. § 3553(a)(6), and *Gall*, the Judges of this Court have agreed that the child pornography guideline produces excessive sentencing ranges and have been routinely sentencing below the advisory ranges in appropriate cases.   In *United States v. Singleton*, 2:16cr24, the defendant pled guilty to receipt of child pornography, and faced a mandatory minimum of 60 months and a guideline range of 151 months to 188 months.   The Court sentenced him to 60 months, a sentence 91 months below the advisory range.   In *United States v. Darby*, 2:16cr36, the defendant pled guilty to receipt of child pornography, faced a mandatory minimum of 60 months and an advisory guideline range of 97 months to 121 months.   The Court sentenced him to 60 months, a sentence 37 months below the advisory range.   In *United States v. Chubb*, 4:13cr74, the Court sentenced the 25 year-old dendant to 72 months on one count of receipt of child pornography, after consideration of the advisory guideline range of 151

months to 188 months.   In *United States v. George*, 4:16cr96, sentenced the 27 year-old defendant to 72 months on one count of distribution of child pornography, after consideration of an advisory guideline range of 151 months to 188 months.   More recently, on March 15, 2018, in *United States v. Lezu*, 2:17cr000167, the Court sentenced the 35 year-old defendant to 73 months in spite of his guidelines range of 97 to 121 months.   Mr. Lezu, like Mr. Austin, was a non-violent, first time offender who came from a good background, who had a history of responsible employment, and a strong family support system.   Unlike Mr. Austin's case, however, Mr. Lezu's case involved a very significant aggravating factor; Mr. Lezu was acknowledged to have possessed the largest collection of child pornography ever seen in this division consisting millions of images.

While Mr. Austin's conduct was reprehensible, it did not involve anything remotely close to a million images and his involvement in this offense spanned only about six months.   Furthermore this is not a case that involved any actual contact with children on the part of Mr. Austin, nor does it involve enticement of children or the production or collection of any images by Mr. Austin.   Therefore, in this case, a downward variance and a limited term of supervised release with a condition to continue treatment would avoid an unwarranted sentence disparity and would also serve the mandate of § 3553(a) to impose a sentence sufficient, but not greater than necessary to punish Mr. Austin's conduct.

**The Need to Provide Mr. Austin with Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

Mr. Austin has no history of drug or alcohol abuse so there are no issues with respect to substance abuse treatment that the Court needs to address. Mr. Austin has a bachelor's degree in geography. He also has a solid employment history, having been employed in a series of progressively more responsible positions since his honorable discharge from the Army in 2005. Most recently, Mr. Austin was employed by the City of Newport News as a GIS Programmer Analyst. He was forced to resign his position as a result of this offense. Mr. Austin fully intendeds to make the best use of his time while incarcerated in an effort to make the transition back into the community as smooth as possible.

As indicated in the Pre-sentence Report, Mr. Austin suffers from post-traumatic stress disorder (PTSD) and chronic depression. Though he has suffered with mental health issues at least since his teenage years, Mr. Austin's experiences in the military are certainly a major factor in his current diagnoses. As noted above, Mr. Austin spent a substantial portion of his time in the Army deployed overseas in combat zones Kosovo and Iraq. He witnessed the horrors of war firsthand and continues to be traumatized by those experiences. He has taken steps to address these issues. As the Court has seen in Mr. Austin's therapy records, he has been in treatment at Clinical Associates of Tidewater for more than a year and he is taking prescribed medications. He and his family fear that once in custody, Mr. Austin will lose access the counseling and

medications that have been so instrumental in dealing with his PTSD and other mental health issues.   He asks that the Court make a recommendation to the Bureau of Prisons that he be housed in a facility where he can continue to receive appropriate counseling and treatment.

Mr. Austin also welcomes the treatment and counseling for sex offenders that he will receive while incarcerated.   He also understands the he will be required to continue such treatment and counseling upon his release from incarceration regardless of the length of his sentence.   He welcomes that opportunity as well and looks forward to demonstrating to the Court that he is sincere in his desire for treatment.

This Court has also had the benefit of reviewing the Psychosexual Examination Report compiled by Dr. Hollings.   This report demonstrates that Mr. Austin is neither a pedophile nor a predator and that he is not a significant risk to reoffend.   Thus, Mr. Austin is not a danger to the community.   The report also demonstrates that Mr. Austin is amenable to treatment and that he will benefit from treatment and counseling.

It is apparent, taking all of these factors into consideration, that the advisory guidelines range in this case is grossly excessive and that the mandatory minimum sentence of 60 months is more than sufficient in this case.

## The Sentencing Range Established for the Offense

The Pre-sentence Report sets forth a total offense level of 33 and criminal history category of I.   The resulting guideline range is 135-168 months, which is exceptionally high given the circumstances of the offense.

18

As set forth above, the child pornography guideline has been recognized by a growing number of courts as fundamentally flawed.   Rather than being a product of the Sentencing Commission's particular expertise in analyzing the empirical data and national experience in sentencing issues, it was driven by Congressional directives.   As a result, § 2G2.2, in its current form, produces advisory guideline ranges that are greater than necessary to achieve the purposes of sentencing.   In addition, the sentencing range suggested by the guidelines fails to take into account that Mr. Austin has no criminal history points, and the suggested sentencing range imposes incarceration that is far longer than needed to provide him with treatment or to protect the public.

Even the low end of 121 months, which is double the mandatory minimum, represents a sentence much greater than necessary in this case to meet the mandates of § 3553.   Such a lengthy sentence of imprisonment will serve to no one—not the government, not society, and certainly not Mr. Austin.   In all likelihood such a sentence would have the opposite effect.   *See, Gall v. United States*, 552 U.S. 38, 54 (2007) (recognizing that a sentence of imprisonment may also serve to "promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances" of the case).   Strict adherence to the guidelines calculations in this case places far too much emphasis on a guidelines scheme that has been roundly and routinely criticized by the Sentencing Commission, by the judges of this Court, and by judges throughout the country.   Such an approach devalues the actual circumstances of the case and the individual defendant and

unduly minimizes the weight given to all of the other § 3553 factors that the Court is bound to consider.

For these reasons, Mr. Austin avers that the appropriate sentence in this case is a period of incarceration of 60 months during which he will receive treatment and counseling designed to address his offense.   This period of incarceration should also be followed by a term of supervised release and continued sex-offender treatment.

## **CONCLUSION**

For the reasons set forth above, the Defendant, Joshua David Austin, by counsel respectfully submits that a sentence of 60 months incarceration, followed by supervised release and continuing treatment, will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

JOSHUA DAVID AUSTIN

_____/s/_____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for Joshua David Austin
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of May, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Megan M. Cowles, Esquire
Assistant U. S. Attorney
*Office of the United States Attorney*
721 Lake Front Commons, Suite 300
Newport News, VA 23606

_____/s/_____ _____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for Joshua David Austin
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com


I hereby certify that on the 9th day of May, 2018, I caused a true and correct copy of the foregoing Motion to be mailed to the following non-filing user:

Kristie M. Milby
U.S. Probation Officer
827 Diligence Drive, Suite 210
Newport News, VA 23606

_____/s/_____ _____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for Joshua David Austin
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

21